May it please the Court, Peter Eliasberg for Plaintiff Robert Rosebrock. I'd like to reserve a couple of minutes for rebuttal. All right. In the proceedings below, the District Court held that the defendants had engaged in viewpoint discrimination in violation of Mr. Rosebrock's First Amendment rights. The Court entered a declaratory judgment on Mr. Rosebrock's First Amendment claim. The government didn't appeal that judgment, so it's now final. Thus, the only issues in front of this Court are whether the District Court erred in denying both requests for injunctive relief that Mr. Rosebrock made, even though he had prevailed on the merits of his First Amendment claim. I'd like to start first with what we call the reparative injunction claim. The District Court found that the defendants began to discriminate on the basis of viewpoint on June 26, 2009, when Ms. Carrier sent Mr. Rosebrock an e-mail and said, You cannot hang the flag on the fence, union down, because it desecrates the flag and it offends people. And that viewpoint discrimination continued for a year until June 30, 2010, when the Court found that Ms. Carrier sent an e-mail out saying, From now on, we're going to faithfully enforce 38 U.S.C. 1.218 and not allow any postings on the fence. Counsel, procedurally, has this case been closed? Well, there is a final judgment on the declaratory relief claim. So, yes, there is a final judgment, and then the question here is the appeal under 1291 of the denial of injunctive relief. So if the injunctive relief had been granted, that would have been all the relief that the plaintiff was seeking, no monetary damages or anything? That's correct. There's no claim for monetary relief at all. So the district court found that basically there was a period of one year of viewpoint discrimination that ended when the government closed the forum, as he put it. Under basic remedial principles, the purpose of a remedial order, injunctive only, Judge Rawlinson is pointing out, is not only to prevent future violations of the law, and I'm quoting here from U.S. versus Virginia, is to both prevent illegal behavior and to place persons unconstitutionally denied an opportunity or a position they would have occupied in the absence of the illegal behavior. Would you agree that one of the primary reasons that the district court declined to give injunctive relief was because of its view that this case was moot? That's, that would go to the preventative injunction that says no future discrimination. But his request, it's clear that his request for a reparative injunction, and Judge Easterbrook clearly addressed this in the CEPA case. If the order is to allow him some period of time to hang the flag on the fence the way he was denied because of the government's illegal behavior, that clearly isn't moot, because that's relief that can be granted going forward. What's your understanding as to why the district court declared, denied that relief? The district court gave two bases. The only Federal court I have found ever in the United States to hold that even where a plaintiff prevailed on the merits of his First Amendment claim, the court would not give injunctive relief on the grounds that it was not in the public interest and the balance of hardships weighed against it. That was an abuse of discretion for three separate reasons. First of all, the court put a lot of weight in the balance of hardships on saying, well, the government's going to be a hardship for the government to prevent people from illegally assaulting or otherwise interfering with Mr. Well, under this Court's decision in San Martino, and a long line of Supreme Court cases that we commonly call the heckler's veto cases, that is not a legally cognizable interest that should have been weighed in the balance of hardships. It was absolutely inappropriate for the court to take, because that's never a basis. Well, in all fairness, in San Martino, it was a theoretical concern regarding complaints, whereas in this case, there had actually been complaints and threats. So I'm not sure that San Martino is really the same factual. Well, but the court, the U.S. Supreme Court's decision in Coates and a whole line of other cases, the court has repeatedly said, we don't prohibit people from speaking, because some other people may engage in illegal behavior because they don't like the speech. In fact, that's blatantly an impermissible ---- There's a difference between may engage in illegal behavior and have engaged in illegal behavior. You don't think that's a difference? No, I don't. And in fact, if the law were, the more likely people were to break the law in order to silence a speaker, it would leave speakers at the mercy of the heckler, which is exactly what the Supreme Court said is impermissible. The mere fact that somebody is more likely to behave illegally and respond to speech he doesn't like by engaging in assault, that would leave speakers at the mercy of the heckler. And that is not what the First Amendment permits. That's one of the reasons that viewpoint discrimination is the most egregious form of First Amendment violation, because we know that oftentimes the government restricts the viewpoint that's going to be the least popular. So if that were permissible, then the government would have had an argument in favor of simply saying, well, there's a reason why we're not going to allow Mr. Rosebrock to hang the flag union down, because people don't like it. But that's not permissible. Viewpoint discrimination is never permissible. And yet the Court said, true, it's not permissible, but we're not going to give you a remedy because someone might engage in a violation. Were those cases in the context of a closed forum rather than a public forum? It doesn't matter, Your Honor, because viewpoint discrimination is illegal in any forum. It is the worst form of discrimination. In fact, it's the only way you can generally win in a closed forum, because the government's allowed to restrict on the basis of content in a closed forum. They're only prohibited from engaging in viewpoint discrimination in a nonpublic forum. What was the other reason? There were the other reason was entirely unmoored from the record. And as we pointed out in our briefs in Stormins v. Salicki, in balancing the public interest, not only is there an enormous weight that has to be given to the public value in seeing First Amendment rights vindicated, which the government basically the Court basically ignored, he said, well, I'm going to speculate that somehow or other the fact that Mr. Rosebrock is hanging the flag on the fence is going to interfere with the VA's provision of health care to patients and other things. There is not a shred of evidence in the record to support that. And if you look at the Court's discussion of the public interest, you'll see he cites not one piece of evidence. But Stormins very clearly says, and that's got to be particularly true when you have a First Amendment, a finding of a First Amendment violation, that if you're going to find that the public interest still weighs against an injunction, there better be something significant in the record to support it. I would say that the request for reparative injunction here is a little odd. The viewpoint discrimination that you pointed out is curious because the comparators here, that is, ordinarily in a viewpoint discrimination case, we say, well, wait a minute, you can't favor these folks who like this and disfavor these folks because they disagree with the policy. In here, the comparators are between Mr. Rosebrock and Mr. Rosebrock. You've said, well, you let Mr. Rosebrock fly the flag union up, but you didn't let him fly the flag union down. And so the solution is that you have to let him fly the flag union down for some period of time to make up for this bad behavior when the VA's policy was that nobody should be hanging a flag union up or union down on VA property, and that they were quite tolerant of Mr. Rosebrock in violation of their own policy for some period of time until it got to be – until they thought it got to be a problem. So it's a very strange sort of viewpoint discrimination case. I'm not sure I can think of another case in which the comparator is Mr. Rosebrock with Mr. Rosebrock. Judge Biby, with all respect, that wasn't the findings. The findings were that it wasn't their policy. In fact, their policy was incomprehensible except for the fact that very clearly, including the police chief, very clearly told Mr. Rosebrock through Mr. Webb that he would be permitted to hang the flag, and that was not a problem under the regulation. So it was not as if some cop on the beach – But wasn't the written policy that no one was to hang anything? What was the policy? There was no written policy. There was no policy, period? They pointed to a regulation that allows the VA designee discretion to decide whether somebody can post materials on the flag. But it has to be the designee of the – of the head guy. That's correct. And was – is there some authority that says that the designee is the police officer? It wasn't the police officer. The police chief ratified this behavior. Is there – is there – assuming that – assuming that's true, is there some indication that he is the designee? There's no indication one way or the other except – Well, then – then perhaps he didn't have it from a designee. He had it from some police officers who thought, well, you know, these are poor old vets, and they're older people, and we don't really want to get involved in hassling them, so let them hang it upside down. It'll stop a lot of hassles and problems. Let them hang them right side up. It'll stop a lot of hassles and problems. It turns out when they're not getting enough reaction from that, they say, okay, we'll hang it upside down. They say, and I think there's some evidence in the record, problems started developing. So they find out, you know, there are going to be a lot of hassles and problems, period, we'll just shut down the whole thing. There are two points. Now, technically, that is – that is indeed viewpoint discrimination. I agree. The district court found that. I will disagree with that. But that's really a little different animal when you're talking about a reparative injunction to force them to allow it to be hung upside down for some number of months in the future. Is it not? But if they – but Judge Fernandez, you're right. There is a judgment, and, Judge Breyer, I think that's relevant here. There's a judgment of viewpoint discrimination. And if there's that judgment, then what is the remedy? And so the point is, whether it's – I'm not disputing the declaratory judgment. I think the district court got that right. But I'm – but the reparative injunction that you're seeking, I've just – I've never heard of such a thing. It's a very strange kind of – Well, I – first of all, I would agree viewpoint discrimination is very rare. It's the worst form of First Amendment violation. The government does it very rarely, so there aren't a lot of cases. I think it is also unusual that if the comparator is Mr. Rosebrook and Mr. Rosebrook, I don't think that's material. If they engaged in viewpoint discrimination, prohibited him from doing something he should have been allowed to do, they did not close the forum for a year. So this was not where they said there are going to be problems, we're now going to close the forum. They waited a year to close the forum. So if that was the truth, then the period of time for which he was discriminated against is the period of time under U.S. v. Virginia and all the remedial cases that he's entitled to the remedy. That's our position. And the fact that the government says there may be some problems, if they had taken the step the minute Judge Fernandez, they saw the flag go up, union down, and said, oh, boy, this is a problem, we're closing the forum, that's not what they did. They discriminated for a year on the basis of viewpoint. And now what they'd like to say is, but there shouldn't really be any significant remedy for us, even though we've engaged in the worst form of First Amendment violation. That would allow them to get away with exactly what they shouldn't have been able to do in the first instance. It sounds a little bit like no good deed will go unpunished. Because if I read this record, it looks like they were just decided to be sloppy because of who these people were and let it drift. And they shouldn't have let it drift so long. I agree if the court said that viewpoint discrimination, they didn't appeal that. I understand. They shouldn't have let it drift so long. But it sounds a little bit unusual to say, well, since they let it drift too long, that means we've got to be able to do it for an even longer time now. It sounds a little bit peculiar in terms of exercising equitable jurisdiction, not in terms of law, et cetera, just in terms of exercising the judge's discretion in equity. I do not believe that in equity where the legal principle is set forth by the Supreme Court is you put the person in the position he would have been absent the violation of the law that is equitable discretion to say, no, we're not. Well, but in equity, you're seeking to balance all of the sides. And equity should not affect punishment on someone who was trying to do the, I mean, to be lenient. And so you're looking at everybody. I mean, there was viewpoint discrimination technically, but if you're doing equity, is that equity to allow a prohibited conduct to reoccur? I don't know. It was not prohibited and equity. But the regulation is perfectly capable of the interpretation the VA has given it today. That is that nobody composed anything on their property. But in July, June 26, 2009, they said to Mr. Rosebrock, don't hang it on the fence union down because it desecrates the flag. But he didn't take the position that you, that we don't allow materials on the flag. Right, which is why you've got the declaratory judgment. But what it suggests is that the remedy for inconsistent enforcement is more inconsistent enforcement. This is Judge Fernandez's no-good-deals-and-punish point. No, it wouldn't be inconsistent enforcement. It would allow him a remedy for the period of time for which his rights were violated. That's not inconsistent enforcement. That is a basic remedial principle. So if I may, I understand the Court's concerns about the remedial. I believe very clearly, though, that there was an abuse of discretion. I'm running out of time. There was an abuse of discretion, not only by considering the heckler's veto, but also by saying he could have gone somewhere else. And the Court looked at cases. There is not a single case where the government has been found to violate the First Amendment and no injunction whatsoever has been issued. And very quickly on mootness, a single email, the government has a history of putting out emails that are inconsistent. It's not just a single email. But it's a single email announcing the enforcement of a regulation that's been on the books for quite some time. And under that – and that's right. That regulation has been on the books for quite some time. And for years, they didn't follow the regulation in the way they're now claiming they're going to follow it. And in fact, they said in the past different positions. In 2009, they said you can't hang it on the fence because of that regulation. Then they allowed it to be hung on the fence for almost a year. Then they said you can't hang it on the fence because it's upside down, not because of the regulation. So there's been nothing consistent about their thing. And now they're saying, trust us this time, even though our prior emails were all over the place, as was our prior behavior. I see that I'm out of time. I believe that we've been – Kagan. I'll give you a minute for rebuttal. Okay. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. May it please the Court, Assistant United States Attorney Indira Cameron Banks on behalf of the appellees. What Mr. Rosebrock wants is a court order to violate an admittedly valid law enforcement regulation. It's undisputed that the VA regulation at issue is constitutionally valid and permissible. It is undisputed that no individual has any legal right to post materials on the fence. And it is undisputed that Mr. Rosebrock may hang the flag in any direction directly in front of the fence on the public walkway. There is no authority that Mr. Rosebrock should be allowed to break the law because the police failed to enforce it in the past. With respect to Mr. Rosebrock's characterization of the requested release as reparative, that does not extinguish the inherently prospective nature of the relief. It's in effect him saying, because VA police allowed me to violate the regulation in the past, I am now entitled to a court order to violate that regulation in the future. To the extent that Mr. Rosebrock wants to prevent the past inconsistent enforcement, the VA took direct corrective action with the June 2010 directive, and there is no evidence that it hasn't been followed. To the extent that Mr. Rosebrock wants to exercise his First Amendment right, he has that right on the public sidewalk in front of the fence. So, counsel, may I ask you then what is the effect of the district court's determination which has not been appealed? The government is not challenging the basis for that decision here on appeal. We don't believe that it's necessary to the effective resolution of this matter. So having determined that there was viewpoint discrimination against Mr. Rosebrock, is it the government's view that he has no remedy available other than the voluntary cessation of the discrimination by the VA? Again, the remedy that would have been available to him no longer exists, because the VA has taken corrective action. So what happens if the VA decides to go back to its prior policy? There's nothing to prevent the VA, once this lawsuit is over, there's nothing to prevent the VA from saying, well, we'll decide on a case-by-case basis how to enforce the regulation. There's no question that the VA police officers made a mistake by not enforcing the regulation consistently and precisely, but there was never a policy to not enforce the regulation consistently or precisely. The government doesn't dispute that the consistent enforcement of the regulation furthers the VA mission, the inconsistent enforcement detracts from the mission by, as is evidenced by this case. So what is there in the record that would assure the court that the VA would not change the policy again? There cannot be any change to the policy because the regulation is in effect. And the directive directly to the police officers by the direct chain of command was to follow the regulation as written. There can be no deviation from that policy. It is to follow the law as written. You don't have an opportunity to deviate from the regulation or deviate from enforcing the regulation simply because you're reluctant to do so. If there were another violation of the declaratory judgment, then Mr. Rosebrock would have to bring another suit, is that right? Without an injunction, he would have to bring another suit. Has he got a 1983 action as well with no defense of qualified immunity under those circumstances? Mr. Rosebrock chose not to bring any other claim. Right, but in a second suit, if somebody, if he tries to, is out in front and they say, look, you can walk on the sidewalk, we'll let you hang your stuff on the fence this week as long as you hang it union side up. Then we've clearly got a violation of the reg. We've got a violation of the policy. There's no injunction in place. So Mr. Rosebrock's only recourse at that point is to go back into court and file a new lawsuit. Has he got a 1983 action with no qualified immunity available to the officers? Well, firstly, it would likely be an action under Bivens. I'm sorry, a Bivens action. Sorry, they're equivalent, but a Bivens action. Of course, you're correct. And, you know, the facts in the law haven't been developed fully, obviously, with respect to the hypothetical. As an initial matter, the officers may be entitled to qualified immunity in that instance. Under what circumstances? You've got a declaratory judgment against you. District Court just declined to issue an injunction. The qualified immunity analysis would depend on... It pretty clearly would be in violation of the injunction. It could be sanctioned under the injunction if we had one in place, right? What argument would they possibly have for avoiding Bivens liability? Well, there's a possibility that a Bivens claim could exist with respect to a qualified immunity analysis that would be particular to the officer at the given time. So there is a possibility that qualified immunity would apply, and there is a possibility that there would be a cognizable Bivens claim. How about Carrier? I'm sorry, Your Honor? What if Carrier decided to allow that to happen? Well, first of all, Ms. Carrier is no longer in the position. Well, assuming Carrier were there. If Ms. Carrier... Ms. Carrier is not directly involved or personally involved in the direct enforcement of the regulation as it relates to the perimeter fence, and that would be required for a Bivens liability to attach. Well, then what is... How do we deal with the fact that it's her message that says, as I told you, you're not to do that to the police. You're not to do this anymore. Ms. Carrier issued the directive in her position as the Associate Director. Correct. That's what I said. And she issued the directive... I guess, in that position as the Associate Director, she stood in the appropriate chain of command to issue that directive with respect to enforcement of the regulation. She was delegated to do that. That's correct? Yes. She's likely to have been the designee. And she's the one who earlier said, just don't hang it upside down, correct? She issued two emails in the summer of 2009. And, you know, one of them said, do not hang anything on the fence. Another one did directly say, do not hang anything with the flag hanging upside down on the fence. And that's the time that the complaints started coming in. So that was her focus at that point in time. So what if somebody succeeded Ms. Carrier and said she was full of it, you know, we should let people hang the flag right side up and not upside down? What would stop the successive director or Associate Director who's designated by the agency from changing the policy? Again, Your Honor, the regulation stands as it stands. If there were somehow some authorization... But the designated person has the ability to interpret the regulation and allow demonstrations or speech in accordance, you know, as deemed appropriate by that designee, right? The regulation simply confers authorization to allow a posting on the fence or not allow a posting on the fence. It does not confer discretion to interpret the policy or interpret the regulation. The regulation has to be enforced as written. Either somebody obtains authorization, seeks authorization and obtains it, and then they have permission to post materials on the fence. That is how the regulation itself is written. But that gives the designee the ability to exercise viewpoint discrimination. Possibly, Your Honor, yes. However, the inconsistent enforcement of the regulation in this case is as it was applied to Mr. Rosebrock. The scenario you're proposing would be an entirely different case. Well, that goes to the mootness to me. Whether or not it's really moot if an additional or subsequent designee could come and reinstate the viewpoint discrimination, I question whether or not it's truly moot. The regulation confers discretion as to whether or not to authorize posting on the fence. But not to any individual police officers as to how or when to enforce the regulation, which is specifically what's at issue in this case. The police are always obligated to enforce the regulation as written, without exception. But they didn't before. Correct, Your Honor. And the VA heads, designees, didn't take any corrective action. The VA did take corrective action. Well, over a long period of time. The long period of time is interesting. The citations that were issued to Mr. Rosebrock were in the late summer of 2009. Between August and September of 2009. Between October and December there was a court order that he was not allowed to post anything on the fence. So for that period of time, there was nothing posted on that fence. In Ms. Carrier's declaration, she does maintain that since December 2009, they have consistently advised Mr. Rosebrock not to post anything on the fence. Was that after the lawsuit was filed? No, Your Honor. That was after the criminal case was dismissed, but before this lawsuit was filed. Unless the court has any further questions, I would just ask that you affirm the district court decision as Mr. Rosebrock is not entitled to the relief that he requests. All right. Thank you, counsel. Rebuttal? Thank you, Your Honors. Three quick points. You're exactly right, Judge Rawlinson. The regulation does give discretion. The government not only has that discretion under the regulation, but throughout the course of this litigation has never contended that it exercised that discrimination So there's no basis to hold to conclude that this case is moot. The government, of course, could do this again. Related, Judge Bybee, you are right, I believe, that Mr. Rosebrock could go into court and bring a Bivens action. But I've never heard of a case that says we don't give an injunction because you could go into court and file a new lawsuit. The purpose of the injunction is to protect the rights that have already been vindicated to ensure that they're not violated again. And the last point the government makes is it would be terrible to give this reparative injunction because Mr. Rosebrock would be doing something illegal. But in Seffick v. Gardner, the GSA had closed the courthouse forum and Judge Easterbrook said it wouldn't be a problem to allow Mr. Gardner to do the display despite the fact that it was closed if that's the appropriate remedy. And if there's viewpoint discrimination, that is the appropriate remedy. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Fernandez, Rawlinson, Bybee